

# EXHIBIT 1

BRIAN PFLUGHOEFT,

    PLAINTIFF,

    v.

KANSAS & OKLAHOMA RAILROAD, L.L.C.,

    DEFENDANT/THIRD-PARTY PLAINTIFF

    v.

MCCORD TIE & TIMBER, INC.,

    THIRD-PARTY DEFENDANT.

Case No. 22-1177-TC-RES

## KANSAS & OKLAHOMA RAILROAD L.L.C.'S OBJECTIONS TO PLAINTIFF'S SECOND AMENDED NOTICE OF TAKING DEPOSITION OF DEFENDANT PURSUANT TO RULE 30(b)(6)

Defendant Kansas and Oklahoma Railroad, L.L.C. ("KORR"), pursuant to the Court's Discovery Order (Doc 101) dated August 4, 2023, submits the following objections to Plaintiff's Second Amended Notice of Taking Deposition of Defendant Pursuant to Rule 30(b)(6), as follows:

1.    Identify the principal and material facts, witnesses, or documents on which you base your contention in Defendant's Answer 16 of Defendant's Answers and Objections to Plaintiff's First Interrogatories that, "Plaintiff acted negligently by undertaking tasks that were outside of his job responsibility and that he had been repeatedly told not to perform, as described in detail above. Additionally, upon information and belief, Plaintiff has admitted noticing that the metal bands on the top bundle of ties had broken but nevertheless proceeded to loosen the straps, resulting in his injury."

**OBJECTION**:

KORR objects to this topic because it is an improper use of Federal Rule of Civil Procedure 30(b)(6) to require a witness explain the bases for KORR's legal contentions, namely its comparative negligence defense under 45 U.S.C. § 53. This topic quotes verbatim KORR's answer to a contention interrogatory that asked KORR to provide the factual basis for its affirmative defenses in this matter. KORR's Answers to Plaintiff's First Interrogatories (attached as Exhibit A to these objections), which have since been further explained in

KORR's Supplemental Answers to Plaintiff's First Interrogatories (attached as Exhibit B to these objections), explained its comparative fault defense and already provided the bases for this defense and identified the witnesses with knowledge of facts relevant to this defense. These witnesses have already been deposed in this case. Thus, the topic is therefore duplicative and cumulative in that it seeks the same principal facts that have already been provided through more appropriate alternative means, namely interrogatory answers and deposition testimony.

Under *In re Independent Service Organizations Antitrust Litigation*, 168 F.R.D. 651 (D. Kan. 1996), the attempt to discover the basis for the defendant's contentions is an overbroad, burdensome, and highly inefficient method through which to obtain otherwise discoverable information and implicates serious privilege concerns. *Id*. at 654. And "[e]ven under the present-day liberal discovery rules, [defendant] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim." *Id.* (citing *United States v. District Council of New York City*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *15 (S.D.N.Y. August 18, 1992)); *see also Trustees of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 5786492, at *4 (D. Mass. Sept. 24, 2014)(citing *In re Independent Services Organizations* and declining to compel corporation to designate witness to answer "contention" topics).

2. Identify the principal and material facts, witnesses, or documents on which you base your contention in Answer 16 of Defendant's Answers and Objections to Plaintiff's First Interrogatories that "Plaintiff has made little to no effort to secure gainful employment since his accident, even though there is no indication that he is disabled from all work."

**<u>OBJECTION</u>**:

KORR objects to this topic because it is an improper use of Federal Rule of Civil Procedure 30(b)(6) to require a witness explain the basis for KORR's legal contention, namely its mitigation of damages defense under 45 U.S.C. § 53. This topic quotes verbatim KORR's answer to a contention interrogatory that asked KORR to provide the factual basis for its affirmative defenses in this matter. KORR's Answers to Plaintiff's First Interrogatories (attached as Exhibit A to these objections), which have since been further explained in KORR's Supplemental Answers to Plaintiff's First Interrogatories (attached as Exhibit B to these objections), explained the principal facts supporting it mitigation defense and identified the witnesses and documents relevant to this defense. Thus, the topic is therefore duplicative and cumulative in that it seeks the same principal facts that have already been provided through more appropriate alternative means, namely interrogatory answers and deposition testimony.

Further, under *In re Independent Service Organizations Antitrust Litigation*, 168 F.R.D. 651 (D. Kan. 1996), the attempt to discover the basis for the defendant's contentions is an overbroad, burdensome, and highly inefficient method through which to obtain otherwise discoverable information and implicates serious privilege concerns. *Id*. at 654. As the Court further explained, "Even under the present-day liberal discovery rules, [defendant] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able

2

to testify on a given defense or counterclaim." *Id.* (citing *United States v. District Council of New York City*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *15 (S.D.N.Y. August 18, 1992)); *see also Trustees of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 5786492, at *4 (D. Mass. Sept. 24, 2014)(citing *In re Independent Services Organizations* and declining to compel corporation to designate witness to answer "contention" topics). This is particularly true where, as here, the facts supporting a mitigation defense were developed through discovery and would be known to KORR only through its counsel.

3.  Identify the principal and material facts, witnesses, documents, or customs and practices on which you base your contentions in Answer 15 of Defendant's Answers and Objections to Plaintiff's First Interrogatories that Plaintiff allegedly violated GCOR Rule 1.6, GCOR Rule 1.33, disregarded specific instructions and admonitions from his supervisor, undertook tasks outside his job duties that he had been expressly told not to do, failed inspect the cars in his train for any hazard that could cause an accident, and upon information and belief, loosened the straps or cables on the carload of ties after recognizing that a metal band securing the ties was loose or broken.

**OBJECTION**:

KORR objects to this topic because it is an improper use of Federal Rule of Civil Procedure 30(b)(6) to require a witness explain the basis for KORR's legal contentions. This topic quotes verbatim KORR's answer to a contention interrogatory that asked KORR to "identify any law, regulation, rule, instruct4ion, custom or practice that you contend Plaintiff violated…." KORR's Answers to Plaintiff's First Interrogatories (attached as Exhibit A to these objections), which have since been further explained in KORR's Supplemental Answers to Plaintiff's First Interrogatories (attached as Exhibit B to these objections), already identified the rules, customs and practices that it contends Plaintiff violated and provided the principal facts supporting its position. Witnesses with knowledge of Plaintiff's acts or omissions have already been deposed in this case. Thus, the topic is therefore duplicative and cumulative in that it seeks the same principal facts that have already been provided through more appropriate alternative means, namely interrogatory answers and deposition testimony.

Further, under *In re Independent Service Organizations Antitrust Litigation*, 168 F.R.D. 651 (D. Kan. 1996), the attempt to discover the basis for the defendant's contentions is an overbroad, burdensome, and highly inefficient method through which to obtain otherwise discoverable information and implicates serious privilege concerns. *Id.* at 654. As the Court further explained, "Even under the present-day liberal discovery rules, [defendant] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim." *Id.* (citing *United States v. District Council of New York City*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *15 (S.D.N.Y. August 18, 1992)); *see also Trustees of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 5786492, at *4 (D. Mass. Sept. 24, 2014)(citing *In re Independent Services*

*Organizations* and declining to compel corporation to designate witness to answer "contention" topics).

DATED this 10th day of August, 2023.

<div style="margin-left: 45%;">

Respectfully submitted by:

 /s/ Craig M. Leff          
Craig M. Leff, #16251
BatesCarey LLP
191 N. Wacker Drive, Suite 2400
Chicago IL 60606
Phone: (312) 762.3220
Fax: (312) 762.3200
cleff@batescarey.com
**ATTORNEYS FOR DEFENDANT
KANSAS & OKLAHOMA RAILROAD, L.L.C.**

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 10, 2023, I served the foregoing electronically on all parties and parties of record:

John W. Johnson, #07684
MORRIS, LAING, EVANS, BROCK
& KENNEDY, Chartered
300 N. Mead, Suite 200
Wichita, KS  67202
Phone:  (316) 262-2671
Fax:  (316) 262-6226
jjohnson@morrislaing.com

**ATTORNEYS FOR PLAINTIFF**

Randal W. LeNeave, MN ID #18112
Paul Banker, MN ID #0397585
Joshua N. Miller, MN ID #0397585
HUNEGS, LeNEAVE & KVAS, P.A.
1000 Twelve Oaks Center Drive, Suite 101
Wayzata, MN  55391
Phone:  (612) 339-4511
Fax:  (612) 339-5150
rleneave@hlklaw.com
pbanker@hlklaw.com
jmiller@hlklaw.com

Kenneth J. Berra, KBN
Eric D. Sexton, KBN
FISHER, PATTERSON, SAYLER & SMITH, LLP
Corporate Woods, Building 51
9393 W. 110thStreet, Suite 300
Overland Park, KS 66210
kberra@fpsslaw.com
esexton@fpsslaw.com
*ATTORNEY FOR THIRD-PARTY DEFENDANT*

/s/ Craig M. Leff

KORR_Exhibit 1-5

| | | |
|---|---|---|
| BRIAN PFLUGHOEFT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 6:22-cv-1177 |
| | ) | |
| KANSAS & OKLAHOMA RAILROAD, | ) | |
| L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT KANSAS & OKLAHOMA RAILROAD, LLC'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST INTERROGATORIES.

1. Identify by name and address all witnesses (excluding retained experts) who have or may have knowledge regarding the facts alleged in Plaintiff's Complaint and describe the subjects that they have information about.

**ANSWER:**

**KORR refers to and incorporates its identification of persons in its Initial Disclosures. KORR is not aware of any other persons with personal knowledge of the incident, equipment, or conditions mentioned in the Complaint. As to damages and medical issues, KORR believes that Plaintiff's treating healthcare providers have knowledge of his condition and their treatment, as described in their respective records.**

**KORR objects, however, to this interrogatory to the extent it concerns each and every allegation in Plaintiff's Complaint without regard to relevance or proportionality. There are multiple allegations contained in Plaintiff's Complaint that are undisputed or that concern matters that are not germane to the disputed questions of fact bearing on Plaintiff's cause of action. For example, Plaintiff alleges that KORR is a Kansas Limited Liability Company that conducts business as a common carrier by railroad. This interrogatory therefore, if taken literally, would require KORR to describe each and every oral and written communication regarding its operation as a common carrier in multiple states without regard to time or location. Plaintiff's failure to tailor this interrogatory to disputed facts relevant to his cause of action renders the interrogatory overly broad and unworkable. Likewise, because Plaintiff has failed to tailor this interrogatory to allegations bearing on**

1

**Plaintiff's substantive claims in this case, the interrogatory seeks information not relevant and proportional to the needs of the case.**

2. List the names, job titles and place of employment of all persons, including the parties to this action, giving any reports or statements, written or otherwise, who were interviewed or questioned by or on behalf of the parties in connection with the matter complained of in this case, and state the dates on which the said reports or statements were obtained, and the name, title, and address of the person or persons taking such reports or statements, and the names and addresses of all persons who have custody of the reports or statements.

**ANSWER:**

**With regard to interviews and statements taken in connection with Plaintiff's injury in the ordinary course of KORR's business, Plaintiff gave a statement, as did engineer Leon Steege. These statements were previously produced. KORR objects to identifying all persons who provided statements or were interviewed by or at the direction of KORR's counsel in anticipation or defense of the present litigation, because such information is protected by the work product privilege.**

3. Identify all of Plaintiff's immediate supervisors at any time during his employment with Defendant.

**ANSWER:**

**Trainmaster Joe Patalano, no longer employed by KORR, was Plaintiff's normal supervisor at the time of the accident. Plaintiff was also under the direction and supervision of Roadmaster Steve Morgan, who was in charge of the tie project that Plaintiff's crew would have supported. KORR objects to attempting to identify every one of Plaintiff's prior immediate supervisors during the entirety of his tenure at the railroad. This information is not relevant and proportional to the needs of the case in that the supervisors' years before Plaintiff's incident would have no knowledge of the facts germane to this case, and attempting to identify all of them would involve a burden disproportionate to any arguable probative value.**

4. State the substance of all conversations or written communications of any kind with Plaintiff relating to the incident at issue, Plaintiff's injury, medical treatment, and any of Plaintiff's attempts to return to work. For each such communication, state the date, form, and substance of

2

the communication and, if oral, identify with whom such communication was made and identify all who were present at the time such communication was made and, if written communication, state by whom received and by whom sent, state the location of all copies of said communication and whether you will produce same without the necessity of a motion.

**ANSWER:**

KORR objects to this request because it is overly broad and burdensome to ask KORR to recount the substance of each oral communication with Plaintiff since the date of his injury. To the extent there are documents containing or memorializing any such communications, they will be produced. But absent some existing written record of communications, KORR cannot accurately recount the details of each communication, and attempting to do so is unduly burdensome.

5. Identify the people responsible for inspecting and maintaining the area and equipment involved in the incident described in Plaintiff's Complaint for a time frame of two (2) years before Plaintiff's workplace incident to date.

**ANSWER:**

The inspections of the track would have been the responsibility of track inspector Terry Showalter. The car that was holding the ties did not belong to KORR, and KORR therefore does not know all of the persons who were responsible for inspecting it over the two years preceding plaintiff's accident to the present date. KORR does state that it was the responsibility of the shipper of the ties, McCord Tie and Timber of Falkville, Alabama, to properly load and inspect the carload of ties before it left its facility. Additionally, as the conductor in charge of the train at Great Bend, which did not have a person on duty whose primary job was to inspect railcars, Plaintiff was responsible for inspecting the cars in the train prior to its movement from Great Bend to the work site near Albert, Kansas. It was likewise Plaintiff's duty to inspect the cars in the train before the train was moved at the work site at Albert.

6. Identify any work performed by Defendant to prepare the workplace so that it was a reasonably safe place to work prior to Plaintiff's reporting for duty before the incident alleged in Plaintiff's Complaint, including the person or persons performing said work, limited to the thirty (30) day period prior to the incident described in Plaintiff's Complaint.

3

**ANSWER:**

The only preparation of the workplace that included the carload of ties was the placement of the railcar at the location, engineer Leon Steege's inspection of the locomotive, and any inspection by Plaintiff of the cars in the train, including before the cars were moved from the Great Bend depot to the location where the train was spotted, and his inspection of the train before it was moved on the date of his accident. Apart from inspecting the cars in the train, Plaintiff's job did not involve any tasks associated with the carload of railroad ties, including loosening the straps or cables that secured the ties. Such work was to be performed exclusively by employees of Trak-Time, a maintenance of way contractor that KORR had hired to unload and install the ties. Trak-Time was responsible for conducting its work in a safe manner.

Additionally, Plaintiff and Mr. Steege were repeatedly reminded by Trainmaster Joe Patalano and Roadmaster Steve Morgan not to touch the ties or the cables that secured the ties because a contractor had been hired to perform such work. Mr. Morgan repeated these admonitions to Plaintiff at the Great Bend depot before Mr. Steege and Plaintiff left for Albert. Mr. Steege repeated these admonitions to Plaintiff when they arrived at the work site in Albert on the date of the injury.

7. Identify any warning Defendant communicated to Plaintiff about the premises, including the tracks, locomotives and cars, materials, and adjacent and surrounding areas, on or before the date of the incident alleged in Plaintiff's Complaint.

**ANSWER:**

As stated in KORR's answer to Interrogatory No. 6, Plaintiff was told repeatedly the day before and day of his injury not to touch the railroad ties or securing cables and to await the contractor, Trak-Time. KORR had given multiple prior warnings to train crews that they were not to touch loads of ties and that the unloading was to be performed exclusively by the contractor.

8. Identify all written or oral communications regarding the facts alleged in Plaintiff's Complaint. If a privilege is claimed, please provide a privilege log.

**ANSWER:**

This interrogatory is facially overbroad and unduly burdensome and is impossible to answer in its present form. Additionally, there are multiple allegations contained in Plaintiff's Complaint that are undisputed or that concern matters that are not germane to the disputed questions of fact bearing on Plaintiff's cause of action. For example, Plaintiff alleges that KORR is a Kansas Limited Liability Company that conducts business as a common carrier by railroad. This interrogatory, therefore, if taken literally, would require

4

**KORR** to describe each and every oral and written communications regarding its operation as a common carrier in multiple states without regard to time or location. Plaintiff's failure to tailor this interrogatory to disputed facts relevant to his cause of action renders the interrogatory overly broad and unworkable. Likewise, because Plaintiff has failed to tailor this interrogatory to allegations bearing on Plaintiff's substantive claims in this case, the interrogatory seeks information not relevant and proportional to the needs of the case.

9. Identify all photographs, videos, maps, drawings, diagrams, measurements, visual representations, or other descriptions regarding the facts alleged in Plaintiff's Complaint. If a privilege is claimed, please provide a privilege log.

**ANSWER:**

**Steve Morgan and Leon Steege took photographs at the scene showing the ties and the car from which they fell. KORR has produced these photographs with its initial disclosures. KORR has also produced statements provided by Plaintiff and Leon Steege, as well as the KMI report concerning Plaintiff's accident. KORR objects to providing additional information in response to this interrogatory because it is facially overbroad and not limited to facts or subjects germane to Plaintiff's claim for the reasons expressed in response to Interrogatory No. 9.**

10. Identify all documents Defendant has received or reviewed relating to the incident alleged in Plaintiff's Complaint. If a privilege is claimed, please provide a privilege log.

**ANSWER:**

**KORR would have received and reviewed documents that it has produced with its initial disclosures. KORR otherwise objects to this interrogatory because it is facially overbroad and unduly burdensome and is impossible to answer in its present form. It is also confusing. The interrogatory also does not distinguish between documents received or reviewed by KORR in the ordinary course of business and those that were received and reviewed by KORR's counsel in anticipation or defense of the present action. If the latter, KORR objects on grounds of work product, because the interrogatory asks KORR to describe the efforts undertaken by or at the request of counsel to assemble and review information that may be relevant to KORR's defense of this case. KORR further objects to providing a privilege log for an interrogatory answer, particularly when doing so is the equivalent of answering the objectionable interrogatory.**

KORR_Exhibit 1-10

11. Identify all witnesses you may use at trial to present opinion testimony, and the opinions they will express, the basis and reasons for them, the facts or data considered, and the witnesses' qualifications.

**ANSWER:**

**KORR has not decided which experts it may use. It will disclose its experts and provide the information required by Federal Rule of Civil Procedure 26 on or before the deadline imposed by the Scheduling Order.**

12. Provide a detailed description of your understanding of the incident described in Plaintiff's Complaint -- what happened, when, where, and how.

**ANSWER:**

**The only description of the incident itself has come from Plaintiff, who is believed to be the only witness to the occurrence. KORR understands that Mr. Steege and Plaintiff brought the work train from Great Bend to the location on the mainline near Albert, Kansas, sometime before the accident and tied down the train. On the morning of the accident, they met at the depot in Great Bend for a job briefing. Mr. Steege and Plaintiff met with Roadmaster Steve Morgan and Track Inspector Terry Showalter and had a job briefing about the work to be performed that day. Mr. Morgan specifically told Plaintiff and Mr. Steege not to touch the railroad ties or the cables that secured them and that a contractor would be arriving to unload, distribute, and install the ties. Mr. Morgan repeated this express admonition both during the job briefing and several times afterward. Trainmaster Joe Patalano had given them similar warnings and directions before they took the train to Albert.**

**On the morning of the accident, Mr. Steege and Plaintiff traveled by truck from the depot to the train, and once they arrived, Mr. Steege began his daily inspection of the locomotives, while Plaintiff began walking the train. Mr. Steege and Plaintiff's only job was to inspect and start the locomotives, inspect the cars, then release the handbrakes on the cars and wait for the contractor to arrive. Mr. Steege reminded Plaintiff of the instructions they had been given at the depot. After Mr. Steege finished his inspection, he was contacted by radio by Plaintiff, who said that there had been an incident but neglected to elaborate. Mr. Steege began walking the train and located plaintiff on the south side of the train near the fourth car. Plaintiff reported that some of the ties had fallen as he was loosening the cables that were securing the load, and the ties fell and knocked him on the head. Despite Plaintiff's request not to, Mr. Steege contacted EMS, told them of the accident, and requested assistance.**

6

13. Identify any complaints made about the area, equipment, or materials involved in the incident alleged in Plaintiff's Complaint together with any witnesses with knowledge regarding these facts.

**ANSWER:**

**None.**

14. Identify prior injuries to Defendant's employees involving falling equipment, supplies, and debris, system-wide, for the three (3) years before the incident alleged in Plaintiff's Complaint to date.

**ANSWER:**

**On June 12, 2017, a track laborer was unloading ties from a push-cart when a tie fell on his ankle and fractured it.**

15. Identify any law, regulation, rule, instruction, custom, or practice that you contend Plaintiff violated with respect to the facts alleged in Plaintiff's Complaint.

**ANSWER:**

**KORR is answering this interrogatory based on information presently available and reserves the right to supplement it after a sufficient time for discovery.**

**Based on what it presently knows, Plaintiff violated GCOR Rule 1.6, which says that employees must not be, among other things, careless of the safety of themselves or others, negligent, or insubordinate. Plaintiff disregarded specific instructions and admonitions from his supervisor, undertook tasks outside his job duties that he had been expressly told not to do, and upon information and belief, loosened the straps or cables on the carload of ties after recognizing that a metal band securing the ties was loose or broken. In performing the particular task that caused his injury, Plaintiff further violated custom and practice.**

**Under GCOR Rule 1.33, it was also Plaintiff's job to inspect the cars in his train for any hazard that could cause an accident and to ensure that cars were loaded safely. If there were obvious conditions that posed a risk of injury, Plaintiff should have noted them.**

**It is further customary that trainmen follow the express directions of their supervisors. Plaintiff violated this custom and practice by performing the very task he was told not to do.**

7

16. State in detail all facts supporting each and every affirmative defense asserted by Defendant and identify all witnesses and documents that support each affirmative defense. State in detail the knowledge believed to be known by each witness.

**ANSWER:**

**KORR objects to this interrogatory because it asks for a detailed recitation of facts and is therefore unduly burdensome. KORR will therefore provide the principal facts based on information presently available and supplement as needed.**

**KORR has not yet filed its Answer and asserted affirmative defenses but anticipates asserting the following:**

**Contributory negligence pursuant to 45 U.S.C. § 53:  Plaintiff acted negligently by undertaking tasks that were outside of his job responsibility and that he had been repeatedly told not to perform, as described in detail above.  Additionally, upon information and belief, Plaintiff has admitted noticing that the metal bands on the top bundle of ties had broken but nevertheless proceeded to loosen the straps, resulting in his injury.**

**Mitigation of Damages:  Plaintiff has made little to no effort to secure gainful employment since his accident, even though there is no indication that he is disabled from all work.**

**Offset for Medical Expenses and Wage Continuation:  Following his accident and through the date of his termination in 2022, KORR continued to pay Plaintiff at 75% of his customary pay.  Plaintiff therefore suffered only a loss of 25% of his normal wages.  Additionally, KORR paid for all of Plaintiff's medical expenses he incurred for treatment associated with his injuries.  These payments should preclude any recovery for the value of the medical services KORR paid for, or alternatively, in the event Plaintiff seeks the value of such services, KORR is entitled to a credit or offset for any amounts awarded by the jury for sums that were previously paid by KORR.**

17. Describe in detail Defendant's fact-finding mission, investigation, re-creation of the incident and injuries, any and all theories or conclusions arising from the investigation and produce all documents and tangible things relating thereto.

**ANSWER:**

**KORR objects to answering this interrogatory with regard to efforts undertaken by or at the direction of counsel, because such information is protected by the work product privilege and attorney-client privilege.  KORR also objects to the request to "describe in detail" its investigation.  Consistent with local requirements, KORR will state the principal facts regarding its investigation.**

8

**Regarding the investigation that KORR undertook in the ordinary course of its business, KORR states that Roadmaster Steve Morgan, drove to the scene and photographed the carload of ties. He concluded that some of the ties had shifted and that when Plaintiff loosened the cables that secured the ties, some of them fell. He concluded that the accident was Plaintiff's fault and resulted from his failure to obey multiple clear instructions and his attempt to perform tasks outside his job responsibilities.**

18. Identify each person participating in Defendant's investigation of this incident and state in detail their knowledge and information possessed by each person.

**ANSWER:**

**See answer to Interrogatory No. 17.**

19. Identify all persons who came upon the scene of the area after the injuries to Plaintiff, including any person who inspected the incident site, locomotives, cars, tracks, ballast, supplies and material, premises, ground, equipment, radio transmissions, event recorder data/records, TIR videos, rules, or object of any nature, or other equipment or conditions involved in Plaintiff's incident in the twenty-four (24) hours preceding the incident and twenty-four hours after the incident.

**ANSWER:**

**Leon Steege was at the scene generally and at the location of Plaintiff's injury. Roadmaster Steve Morgan and Track Inspector Terry Showalter were also present. Representatives of Trak-Time also showed up at the scene after the accident. KORR does not know the name of the Trak-Time employees.**

Respectfully submitted by:

 */s/ Craig M. Leff*
Craig M. Leff, #16251
BatesCarey LLP
191 N. Wacker Drive, Suite 2400
Chicago IL 60606
Phone: (312) 762.3220
Fax: (312) 762.3200
cleff@batescarey.com
**ATTORNEYS FOR DEFENDANT
KANSAS & OKLAHOMA RAILROAD, L.L.C.**

9

# CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2022, I served the following via electronic mail on:

John W. Johnson, #07684
MORRIS, LAING, EVANS, BROCK
& KENNEDY, Chartered
300 N. Mead, Suite 200
Wichita, KS  67202
Phone:  (316) 262-2671
Fax:  (316) 262-6226
jjohnson@morrislaing.com

Randal W. LeNeave, MN ID #18112
Paul Banker, MN ID #0397585
Joshua N. Miller, MN ID #0397585
HUNEGS, LeNEAVE & KVAS, P.A.
1000 Twelve Oaks Center Drive, Suite 101
Wayzata, MN  55391
Phone:  (612) 339-4511
Fax:  (612) 339-5150
rleneave@hlklaw.com
pbanker@hlklaw.com
jmiller@hlklaw.com

**ATTORNEYS FOR PLAINTIFF**

/s/ Craig M. Leff

KORR_Exhibit 1-15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRIAN PFLUGHOEFT,                     )
                                      )
      Plaintiff,              )
                                      )
                                      )
v.                                    )          Case No. 6:22-cv-1177
                                      )
KANSAS & OKLAHOMA RAILROAD,           )
L.L.C.,                               )
                                      )
      Defendant.              )

## DEFENDANT KANSAS & OKLAHOMA RAILROAD, LLC'S SUPPLEMENTAL ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST INTERROGATORIES.

Defendant Kansas and Oklahoma Railroad, LLC ("KORR") provides the following

Supplemental Answers to Plaintiff's First Interrogatories.

## INTERROGATORIES

16. State in detail all facts supporting each and every affirmative defense asserted by

Defendant and identify all witnesses and documents that support each affirmative defense. State

in detail the knowledge believed to be known by each witness.

## ANSWER:

**KORR objects to this interrogatory because it asks for a detailed recitation of facts and is therefore unduly burdensome.  KORR will therefore provide the principal facts based on information presently available and supplement as needed.**

**KORR has not yet filed its Answer and asserted affirmative defenses but anticipates asserting the following:**

**<u>Contributory negligence pursuant to 45 U.S.C. § 53</u>:  Plaintiff acted negligently by undertaking tasks that were outside of his job responsibility and that he had been repeatedly told not to perform, as described in detail above.  Additionally, upon information and belief, Plaintiff has admitted noticing that the metal bands on the top bundle of ties had broken but nevertheless proceeded to loosen the straps, resulting in his injury.**

1

**Mitigation of Damages**: Plaintiff has made little to no effort to secure gainful employment since his accident, even though there is no indication that he is disabled from all work.

**Offset for Medical Expenses and Wage Continuation**:  Following his accident and through the date of his termination in 2022, KORR continued to pay Plaintiff at 75% of his customary pay.  Plaintiff therefore suffered only a loss of 25% of his normal wages.  Additionally, KORR paid for all of Plaintiff's medical expenses he incurred for treatment associated with his injuries.  These payments should preclude any recovery for the value of the medical services KORR paid for, or alternatively, in the event Plaintiff seeks the value of such services, KORR is entitled to a credit or offset for any amounts awarded by the jury for sums that were previously paid by KORR.

## SUPPLEMENTAL ANSWER:

### Contributory Negligence pursuant to 45 U.S.C. § 53

In addition to the answer provided above and in KORR's original answers to Interrogatory Nos. 6, 7, and 12, 15, KORR states that it was not the job of a conductor to loosen the metal tie-down cables that secured the ties to the flat car, as addressed by Steven Morgan, Luke Lohrmeyer, Terry Showalter, and Joe Patalano in their respective depositions.  Rather, it was the job of Trak-Time, the contractor hired to perform tie work, to unload, distribute, and install the ties.  Plaintiff testified that no one from the railroad had ever told him, either on the date of his accident or previously, that it was his job to loosen the cables on a tie car.  As testified to by Mr. Steege, Plaintiff had been told repeatedly by Mr. Patalano and Mr. Morgan that they were not to touch the loaded tie cars and were to await the arrival of Trak-Time.  Mr. Lohrmeyer gave similar warnings to Plaintiff the day before his accident, and Mr. Steege reminded Plaintiff of the admonitions from Mr. Patalano and Mr. Morgan shortly before Plaintiff's accident.

Additionally, Plaintiff testified that he recalled seeing ties that had shifted on one of the tie cars but could not say for certain that it was the car or ties with which he was working at the time of the accident.  If Plaintiff did see shifted ties that he thought could pose a risk of injury, he should have notified a supervisor of the issue, as he testified he had done on prior occasions.

### Mitigation of Damages

Plaintiff has made little to no effort to secure gainful employment after his termination by KORR in June 2022.  He appears to consider himself totally and permanently disabled from all gainful employment and is therefore seeking disability benefits through the Railroad Retirement Board, which presuppose an inability to engage in work and make disability benefits unavailable for any month in which the party receives amounts exceeding the disability earnings limit/maximum established by the RRB.  Plaintiff's self-perception of his disability is at odds with the only physical restrictions or limits, which his doctor Eva Henry placed on him.  These were lifting restrictions not to exceed 25 pounds frequently and 50 pounds occasionally, and a prohibition from working at unguarded heights.  These restrictions were based on the FCE report of Christopher Leighton, PT, DPT.  KORR

2

**disputes the additional proposed restrictions recommended by Dr. Steven Lockman, who is not a treating physician, and in his report, KORR's expert Dr. Alan Weintraub, M.D. explains his disagreement with Dr. Lockman on this point. Given his residual work capacity, Plaintiff has the ability to find employment but has chosen not to do so.**

**KORR in its termination letter offered the Plaintiff the services of a vocational rehabilitation counselor who could assist Plaintiff in finding alternative employment within his restrictions and abilities. Plaintiff declined to take advantage of this offer.**

Respectfully submitted by:

*/s/ Craig M. Leff*

Craig M. Leff, #16251
BatesCarey LLP
191 N. Wacker Drive, Suite 2400
Chicago IL 60606
Phone: (312) 762.3220
Fax: (312) 762.3200
cleff@batescarey.com
**ATTORNEYS FOR DEFENDANT**
**KANSAS & OKLAHOMA RAILROAD, L.L.C.**

3

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 18, 2023, I served the following via electronic mail on:

<div style="display:flex; gap:2em;">

John W. Johnson, #07684
MORRIS, LAING, EVANS, BROCK
& KENNEDY, Chartered
300 N. Mead, Suite 200
Wichita, KS  67202
Phone:  (316) 262-2671
Fax:  (316) 262-6226
jjohnson@morrislaing.com

Randal W. LeNeave, MN ID #18112
Paul Banker, MN ID #0397585
Joshua N. Miller, MN ID #0397585
HUNEGS, LeNEAVE & KVAS, P.A.
1000 Twelve Oaks Center Drive, Suite 101
Wayzata, MN  55391
Phone:  (612) 339-4511
Fax:  (612) 339-5150
rleneave@hlklaw.com
pbanker@hlklaw.com
jmiller@hlklaw.com

</div>

**ATTORNEYS FOR PLAINTIFF**

Kenneth J. Berra, KBN
Eric D. Sexton, KBN
FISHER, PATTERSON, SAYLER & SMITH, LLP
Corporate Woods, Building 51
9393 W. 110thStreet, Suite 300
Overland Park, KS 66210
kberra@fpsslaw.com
esexton@fpsslaw.com
*ATTORNEY FOR THIRD-PARTY DEFENDANT*

/s/ Craig M. Leff

4

KORR_Exhibit 1-19