**In the United States District Court
for the District of Kansas**

———————

Case No. 22-cv-01177-TC

———————

BRIAN PFLUGHOEFT,

*Plaintiff*

v.

KANSAS & OKLAHOMA RAILROAD, L.L.C.,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Brian Pflughoeft, formerly a conductor for Defendant Kansas & Oklahoma Railroad, L.L.C., brought suit to recover for injuries incurred while at work. Doc. 1. K&O moves to dismiss his negligence per se and strict liability claims. Doc. 7. For the following reasons, K&O's motion is granted in part and denied in part.

**I**

**A**

**1.** A viable complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from the named defendant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Evaluating a motion to dismiss is a two-step process. *Iqbal*, 556 U.S. at 678–80; *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). First, the court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Iqbal*, 556 U.S. at 678–80. Second, the court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

1

678 (citing *Twombly*, 550 U.S. at 556). A claim need not be probable to be considered plausible. *Id.* But the facts, viewed in the light most favorable to the claimant, must adduce "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**2.** Challenges to a pleading often request relief under Rule 12(b)(6) and Rule 12(e) in the alternative. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1376 (3d ed. Apr. 2022 update). "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The movant "must point out the defects complained of and the details desired." *Id.* Motions under this rule are proper "only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading," not in cases where the pleading merely lacks detail. Fed. R. Civ. P. 12(e) advisory committee's note (1946 amend.).

**B**

Pflughoeft worked as a conductor for Kansas & Oklahoma Railroad, L.L.C. Doc. 1 at ¶ 9. In August 2019, he received an assignment "to operate the work train for the maintenance of way [] crews" in Albert, Kansas. *Id.* at ¶ 10. When Pflughoeft arrived in Albert, he found two locomotives and several center beam flat railcars in the yard. *Id.* The railcars were loaded with bundles of railroad ties, which were tied with banding straps and "stacked about three high." *Id.* The bundles were secured to the railcars by cables. *Id.*

As part of his duties as conductor, Pflughoeft went to each railcar "to perform an air brake inspection and release the cables to allow the [maintenance of way] crew access to the bundles." Doc. 1 at ¶ 10. At the fifth railcar, Pflughoeft released a cable, and the railroad ties fell from the car and struck him. *Id.*

Pflughoeft alleges that the railroad ties fell because the banding straps were broken and defective, the load was not properly blocked, and the load shifted and became unstable due to improper maintenance and adjustment of the railcar's draft system. Doc. 1 at ¶ 10. He filed suit and proposes three theories for recovery. Doc. 1. In his negligence claim, Count I, Pflughoeft alleges that K&O breached its duty to provide a reasonably safe workplace, *id.* at ¶ 11, and in the alternative, alleges that K&O was negligent under the doctrine of res ipsa loquitor, *id.* at ¶ 12. Count II alleges negligence per se, on the theory that K&O violated the Association of American Railroads' (AAR) rules, including those pertaining to "open top loading." *Id.* at ¶ 14. Finally, Count III is a strict liability/negligence per se claim. *Id.* at ¶ 16. It alleges K&O violated the Safety Appliance Act (SAA), 49 U.S.C. §§ 20301–20306, and the SAA's corresponding regulations in 49 C.F.R. Part 215, by using railcars equipped with draft systems which were defective. *Id..* According to Pflughoeft, each of these violations establishes K&O's fault. *Id.* at ¶¶ 14, 16. K&O moves to dismiss Counts II and III or, in the alternative, for a more definite statement. Doc. 7.

## II

K&O's motion to dismiss is granted in part and denied in part. While violations of the AAR cannot support a claim of negligence per se in Count II, Pflughoeft has alleged facts that make his Count III claim plausible.

### A

K&O asserts dismissal of Count II is proper because AAR rules are not statutes or regulations that support a claim for negligence per se under the FELA. Doc. 8 at 5–7. K&O's motion to dismiss Count II is granted.

**1.** Pflughoeft's claims against his former railroad employer are bound by the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51–60. Under FELA, "railroads are made answerable in damages for an employee's 'injury or death resulting in whole or in part from [carrier] negligence.'" *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011) (quoting 45 U.S.C. § 51). FELA is a "broad remedial statute," which has been liberally construed to accomplish Congress's goals, including "to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561–62 (1987) (quotation omitted).

3

FELA obligates an employer to pay damages for injuries to its employees that are caused, "in whole or in part, by the employer's fault" arising from either a "breach of the duty of care . . . or a breach of some statutory duty." *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958); *see also Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1281 (10th Cir. 2018) (citing *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 704 n.12 (2011) ("An employee can recover under FELA for the railroad's violation of a safety statute or regulation under the theory of negligence per se.")); *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1286 n.6 (10th Cir. 2018). When a statutory duty is violated, negligence per se alleviates a plaintiff's need to prove duty and breach, requiring instead only proof of a relaxed causal relation between the injury and the defendant's violation of the statute or regulation. *See Carter v. Atlanta & St. A.B. Ry. Co.*, 338 U.S. 430, 434 (1949); *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994); *Wilson v. Union Pac. R. Co.*, 56 F.3d 1226, 1229–30 (10th Cir. 1995).

FELA "jurisprudence gleans guidance from common-law developments." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 568 (1987). But some developments are unique to FELA. Importantly, it broadens the scope of negligence per se claims beyond what the common law provides. Under the common law, negligence per se is limited to instances where the injury falls within the protective scope of the statute. *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432–33 (1958). Not so under FELA. *Id.* Rather, an employee may recover on a theory of negligence per se "even if the injuries sustained were not of a type that the relevant statute sought to prevent." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994).

Despite these innovations, "[w]hat constitutes negligence for [FELA's] purposes is a federal question" and "principles of common law" often inform that federal question. *Gottshall*, 512 U.S. at 543. So although common-law principles are not dispositive in the FELA context, "they are entitled to great weight." *Id.* at 544.

**2.** Pflughoeft seeks to impose liability on K&O based on an alleged violation of rules and standards promulgated by the Association of American Railroads. Doc. 1 at 5. The weight of authority indicates that a plaintiff may avail himself of negligence per se only when his injuries arise from an employer's violation of a statutory or regulatory duty. *See, e.g.*, *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1286 n.6 (10th Cir. 2018) (Federal Locomotive Inspection Act); *Urie v. Thompson*, 337 U.S. 163, 188–89 (1949) (Safety Appliance Act and Boiler Inspection Act); *Seaboard Air Line Ry. v. Horton*, 233 U.S. 492, 503 (1914) (Hours of Service Act); *Miller v. Union Pac. R.R. Co.*, 972 F.3d 979 (8th Cir.

4

2020) (Federal Railroad Administration regulations); *see also Schipper v. BNSF Ry. Co.*, No. 07-2249, 2008 WL 2783160, at *11 (D. Kan. July 16, 2008) (holding that the violation of internal safety procedures does not constitute negligence per se).

There appears to be no binding precedent considering whether AAR rule violations can support a negligence per se claim. Several good reasons suggest the answer is no.

Congress framed FELA in general terms. *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958). But when describing this permissive standard, the Court still only stated that "fault may consist of…a breach of some statutory duty." *Id.* The *Kernan* reference to "statutory dut[ies]" is not exclusive—courts often include regulatory duties alongside statutory duties. *E.g.*, *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1281 (10th Cir. 2018) ("An employee can recover under FELA for the railroad's violation of a safety statute or regulation under the theory of negligence per se."); *Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992) (referring to "statute[s] or regulation[s]"). They do so consistently with the Supreme Court's guidance that "[w]hat constitutes negligence for [FELA's] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes." *Urie v. Thompson*, 337 U.S. 163, 174 (1949). Even so, not every statute or regulation can establish the standard of care under FELA. *Compare Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156, 1165 (3d Cir. 1992) (finding that OSHA does not apply) *and Robertson v. Burlington N. R.R.*, 32 F.3d 408, 410-11 (9th Cir. 1994) (same) with *Pratico v. Portland Terminal Co.*, 783 F.2d 255 (1st Cir. 1985) (finding OSHA does apply).

Allowing a private safety rule to establish negligence as a matter of law would exceed the limits set by this framework. If anything, courts to consider the issue have rejected that possibility. For example, *Brown v. Cedar Rapids and Iowa City Ry. Co.* observed that "[t]he trend…favors admission of industry or voluntary association codes and of private codes adopted by an employer" as evidence of negligence. 650 F.2d 159, 163 (8th Cir. 1981). But *Brown* also noted that "[s]uch codes do not have the force of law and do not establish negligence per se." *Id.*

Of course, AAR rules are not irrelevant in a FELA case. Courts permit juries to consider AAR rules as evidence of a railroad's standard of care. *E.g.*, *Fulton v. St. Louis–S.F. Ry*, 675 F.2d 1130, 1133 (10th Cir. 1982); *Moses v. Union Pac. R.R.*, 64 F.3d 413, 419 (8th Cir. 1995) ("AAR rules, and industry safety rules in general, are admissible as

5

some evidence that the railroad has acted in a generally non-negligent fashion."). But no court has used AAR rules to establish duty and breach as a matter of law. The AAR is merely "an industry standard-setting organization." *Roth v. Norfalco LLC*, 651 F.3d 367, 372 (3d Cir. 2011). So while an AAR rule standing alone might be evidence of negligence, it will not support negligence per se.

Pflughoeft points to *Green v. Denver & Rio Grande W. R. Co.*, 59 F.3d 1029, 1034 (10th Cir. 1995), and *Parra v. Atchison, Topeka & Santa Fe Ry. Co.*, 787 F.2d 507, 509 (10th Cir. 1986), to support his contrary position. Doc. 14 at 6. In particular, he notes that *Green* included a sentence predicting that "an alleged violation of a specific, objective safety rule could warrant an instruction on negligence per se." 59 F.3d at 1034 (citing *Parra,* 787 F.2d at 509). But language within a decision is not a statement of law. *Alexander v. Sandoval*, 532 U.S. 275, 282 (2001) ("this Court is bound by holdings, not language"). Indeed, both *Green* and *Parra* dealt only with claims of negligence and whether violations of safety rules might be used to support a claim of negligence. Neither involved negligence per se nor alleged a violation of rules set by an external group such as the AAR. *Green*, 59 F.3d at 1034; *Parra*, 787 F.2d at 509. In other words, neither case had the opportunity to explain or apply the law concerning negligence per se. *See Fulton v. St. Louis–S.F. Ry*, 675 F.2d 1130, 1133 (10th Cir. 1982) ("The [district] court here…properly instructed the jury that the [AAR] rules were 'not admitted as legal standards of duty, but as evidence of the measure of caution which ought to be exercised in situations to which the rules apply.'").

Other applications of negligence per se in the FELA context comport with *Green*. These cases have recognized that an internal safety rule violation may be evidence of negligence, but not negligence per se. *See, e.g.*, *Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1091 (10th Cir. 1994) ("Although MoPac's company rules do not alter the applicable standard of care, they are admissible to show negligence."); *Schipper v. BNSF Ry. Co.*, No. 07-2249, 2008 WL 2783160, at *11 (D. Kan. July 16, 2008) (finding "no support for the argument that a violation of internal safety procedures themselves constitutes negligence per se in the F.E.L.A. context"); *BNSF Ry. Co. v. Lafarge Sw., Inc.*, No. CV 06-1076, 2008 WL 11322918, at *10 (D.N.M. Nov. 3, 2008) (holding that the violation of "internal operating rules" would not constitute negligence per se). The same is true of other authorities that have interpreted *Green*. *E.g.*, Fed. Civ. Jury Instr. 7th Cir. 9.01 (2021) (citing *Green* as authority for pattern jury instruction language that reads "[i]n deciding whether Defendant was negligent,

6

you may consider industry custom or safety rules, but what is reasonable is up to you").

**3.** Even assuming a violation of a company safety rule could serve as the basis for negligence per se in the Tenth Circuit, that principle would not extend to the AAR rule(s) at issue in this case. In particular, at least one court has recognized that a violation of internal safety rules constituted negligence per se because an applicable federal regulation made the railroad responsible for ensuring its employees' compliance with its internal rules. *Schmitz v. Canadian Pac. Ry. Co.*, No. 05-C0369, 2006 WL 3488846, at *2 (E.D. Wis. Dec. 4, 2006) That scenario is not present here: Pflughoeft has not alleged that any federal regulations incorporated the AAR rules upon which he intends to rely or required compliance with them. *See* Doc. 14. As explained above, AAR rules may be cited as evidence of an employer railroad's negligence. *See Robinson*, 16 F.3d at 1091. But no court has held that their violation, without a federal hook, constitutes negligence per se. K&O's motion to dismiss Count II is granted.

**B**

K&O also contends that dismissal of Count III is proper because, in his complaint, Pflughoeft failed to identify the SAA provision that K&O allegedly violated and how that violation caused his injury. Doc. 8 at 7–9. In the alternative, K&O asserts that Pflughoeft should be ordered to provide a more definite statement under Rule 12(e). *Id.* at 9–10. K&O's motion to dismiss or, in the alternative, for a more definite statement as to Count III is denied.

The SAA "govern[s] common carriers by railroad engaged in interstate commerce." *Little v. Budd Co., Inc.*, 955 F.3d 816, 823 (10th Cir. 2020), as corrected (Apr. 6, 2020) (quoting *Gilvary v. Cuyahoga Valley Ry. Co.*, 292 U.S. 57, 60 (1934)). These carriers must equip railcars with safety features listed in the SAA, "including designated types of couplers, brakes, running boards, and handholds." *Id.* (citing 49 U.S.C. § 20302(a)). A plaintiff cannot sue under the SAA itself, but "an SAA violation constitutes per se negligence for purposes of employer liability under FELA." *Wilson v. Union Pac. R. Co.*, 56 F.3d 1226, 1229 (10th Cir. 1995). FELA's relaxed causation standard applies to negligence per se claims based on the SAA. *Id.* at 1230. So an employer is liable if the plaintiff's "injury resulted in whole or in part from the railroad's violation of the [SAA]." *Id.* (citation and internal quotation marks omitted).

**1.** K&O first asserts that Pflughoeft's complaint fails to state a claim because "[n]otice pleading requirements suggest that [a] plaintiff must plead the specific statute on which he bases his claim for negligence per se." Doc. 8 at 7. Not so—Pflughoeft's references to the SAA are sufficient. He alleges that K&O violated the SAA's provision (and corresponding federal regulations) concerning railcar couplers. Doc. 1 at ¶ 16; *see also id.* at ¶ 10. While the complaint does not identify a specific section of the SAA, determining which one is intended is not difficult. The Act contains only six statutes and only one of them has a specific subsection detailing a railcar's need to have a working automatic coupler. 49 U.S.C. § 20302(a)(1)(A); *accord* Doc. 14 at 7 (referencing "the coupler provision" in the SAA). In this context, Pflughoeft's complaint gives K&O "fair notice of what the claim is and the grounds upon which it rests." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555)); *Mahurin v. BNSF Ry. Co.*, No. 21-CV-431, 2022 WL 11270984, at *3 (N.D. Okla. Oct. 19, 2022) (finding a similarly pleaded complaint survived the defendant's 12(b)(6) and 12(e) attacks).

In any event, the authorities cited by K&O do not support, much less compel, a different result. *Graham v. Prudential Home Mortg. Co.*, 186 F.R.D. 651, 653 (D. Kan. 1999), merely recited the standard for evaluating a motion to dismiss and determining whether it provided fair notice. And *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1244 (D. Kan. 2002), opined that a bald allegation that the "defendant violated unspecified 'local, state and federal statutes, guidelines and regulations' [did] not provide fair notice" for a negligence per se claim. *Id.* at 1244 & n.2. Pflughoeft's SAA allegations explain the nature of his claim, the law on which it is based, and the facts that support it. Fed. R. Civ. P. 8(a) (requiring only a short and plain statement); Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1376 (3d ed. Apr. 2022 update) (noting the complaint need only plead facts "to make out one or more potentially viable legal theories on which [Pflughoeft] might proceed").

**2.** K&O also asserts that Pflughoeft's "conclusory allegations fail to support a reasonable inference" that its negligence caused Pflughoeft's injuries. Doc. 8 at 9; *see also* Doc. 20 at 7. Among other things, K&O says, Pflughoeft does not inform K&O "of the alleged act or omission" that caused Pflughoeft's injuries or "the specific equipment alleged to violate the SAA." Doc. 8 at 9–10 ("Count III…contains only threadbare recitals of a FELA action.") Although sparse, Pflughoeft's Complaint provides this information. It alleges that K&O used "railcars equipped with draft systems, including couplers and their component parts," that were defective in violation of

the SAA, 49 U.S.C. §§ 20301–20306, and FRA requirements for couplers, 49 C.F.R. Part 215. Doc. 1 at ¶ 16; Doc. 14 at 10. According to the Complaint, these defective couplers allowed the load to shift so that the railroad ties fell and injured Pflughoeft when he released the cables. Doc. 1 at ¶ 10.

K&O objects that Pflughoeft "does not allege what actually took place or how the defendant's alleged negligence cause plaintiff's injuries." Doc. 8 at 8. That is, Pflughoeft discusses the couplers, but does not tie them to K&O. But Pflughoeft's allegations sufficiently allege negligence and link that negligence to K&O's actions. As a result, K&O's motion to dismiss or, in the alternative, for a more definite statement as to Count III is denied.

### III

For the reasons set forth above, K&O's Motion to Dismiss, Doc. 7 is GRANTED in part and DENIED in part.

It is so ordered.

Date: November 27, 2023                     s/ Toby Crouse
                                            Toby Crouse
                                            United States District Judge

9